## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **CEDRIC MICHAEL WHALEY** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:07-CV-1372-K (BH)** |
| | § | |
| **LUPE VALDEZ** | § | |
| | § | |
| **Defendant.** | § | **Pretrial Management** |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to Special Order No. 3-251 this case was referred by the District Court to this Court

for pretrial management, including the determination of non-dispositive motions and issuance of

findings of fact and recommendations to the District Court on dispositive motions. Before the Court

are the following:

(1) *Motion for Summary Judgment Based on Qualified Immunity of Defendant Lupe Valdez* ("Mot."), filed January 23, 2008;

(2) *Memorandum Brief in Support of Motion for Summary Judgment Based on Qualified Immunity of Defendant Lupe Valdez* ("Mot. Br."), filed January 23, 2008; and

(3) *Appendix to Motion for Summary Judgment Based on Qualified Immunity of Defendant Lupe Valdez* ("Mot. App."), filed January 23, 2008.

Plaintiff did not file a response. Having reviewed the pertinent filings above and the law applicable

to the issues raised, the Court finds that Defendant's *Motion for Summary Judgment* should be

**DENIED**.

## I. BACKGROUND

Plaintiff Cedric Michael Whaley ("Plaintiff"), who proceeds *pro se* and *in forma pauperis*

in this matter, is currently incarcerated in the Fort Stockton Unit of the Texas Department of

Criminal Justice.  *Complaint, Whaley v. Valdez*, No. 3:07-CV-1372-K, at 3 (N.D. Tex. filed Aug. 9, 2007) (hereinafter, "Compl.").  Prior to his incarceration in Fort Stockton, he was detained in the Lew Sterrett Justice Center of the Dallas County Jail from June 26, 2006, to November 13, 2006. (*Id.* at 4; *see* Mot. App. Ex. 2).  While in the Dallas County Jail, Plaintiff alleges that Defendant Lupe Valdez ("Valdez"), Sheriff of Dallas County, violated his rights under the United States Constitution.  Valdez has submitted medical records that detail the medical care Plaintiff received while in her custody.  The two medical records show that Plaintiff was screened for tuberculosis on June 26, 2006, and that he was examined by a nurse on November 13, 2006.  (Mot. App. Ex. 3, at 31-32).  Neither of the two medical records submitted by Valdez indicate that any medications were prescribed to Plaintiff at the time of his detention in the Dallas County Jail.  (*See* Mot. App. Ex. 3, at 30-31).

In his complaint, Plaintiff first contends that he and nine other inmates were assigned to a cell with only seven beds.  (Compl. at 4).  Due to this overcrowding, he avers that he was forced to sleep on the concrete floor, and that this sleeping arrangement exacerbated a pre-existing knee injury he sustained in a motorcycle accident.  (*Id.*; *Answers to Magistrate Judge's Questionnaire*, docket no. 7, at 3 (hereinafter, "MJQ")).  Plaintiff avers that having to sleep on the floor for four and a half months diminished his ability to stand for long periods of time and his ability to walk.  (MJQ at 3).  Second, Plaintiff contends he received inadequate food and nutrition; the food was not nutritious, the portions were small, and that it made him sick because he had constant stomach pain and diarrhea.  (Compl. at 4).  As a result, he says he lost more than twenty pounds.  *Id.*  Third, Plaintiff contends he was denied reasonable or adequate medical care.  *Id.*  Plaintiff avers that he did not receive medicine prescribed to him for high blood pressure, and that despite numerous requests for medical care related to his knee injury and food-related illnesses, he did not receive any medical

treatment while detained in the Dallas County Jail. (MJQ at 4, 6-7). Plaintiff avers that Valdez was personally involved in the events that form the basis of his suit because she ignored kit requests he sent to her complaining about the conditions of his confinement and lack of access to medical care. (*Id*. at 2). He further avers that Valdez told him that his complaints were "not her problem" and that she had "enough problems of her own to worry about." *Id*.

In her answer, Valdez asserted the defense of qualified immunity. (*Defendant's Original Answer*, docket #11, filed Nov. 8, 2007). To ensure the early resolution of the qualified immunity issue, this Court issued a scheduling order for a motion for summary judgment on the issue of qualified immunity. (Docket #13).

Valdez filed the instant motion for summary judgment on January 23, 2008. She avers that she was not personally involved in any of the events that form the basis of Plaintiff's suit. (Mot. App. Ex. 4, 32). She further avers that she was never aware of facts or circumstances that led her to believe Plaintiff's conditions of confinement were overcrowded, that he was denied adequate food or nutrition, or that he was denied reasonable or adequate medical care. (*Id*. at 32-33).

Plaintiff did not file a response, and the issue is now ripe for determination.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no

genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

Generally, the courts liberally construe the pleadings of a *pro se* plaintiff. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir.1981); *Martin v. United States Post Office*, 752 F. Supp. 213, 218 (N.D. Tex. 1990). However, the courts have no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Instead, a party opposing summary judgment must "identify specific evidence in the record" that supports the challenged claims and "articulate the precise manner in which that evidence supports [a challenged] claim." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954

F.2d 1125, 1131 (5th Cir. 1992).  Summary judgment in favor of the movant is proper if, after

adequate time for discovery, the motion's opponent fails to establish the existence of an element

essential to his case and as to which he will bear the burden of proof at trial.  *Celotex*, 477 U.S. at

322-23.

Where, as here, the nonmovant fails to respond to the motion for summary judgment, such

failure does not allow the court to enter a default summary judgment.  *Hibernia Nat'l Bank v. Admin.*

*Cent. Sociedad Anonima*, 776 F.2d 1277 (5th Cir. 1985) (citing *John v. La. (Bd. of Trs. for State*

*Colls. & Univs.)*, 757 F.2d 698, 709 (5th Cir. 1985)).  However, "[a] summary judgment nonmovant

who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute

summary judgment evidence."  *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996)

(citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)).  In addition,  the

movant's evidence may be accepted as undisputed.  *Thompson v. Eason*, 258 F. Supp. 2d 508, 515

(N.D. Tex. 2003) (citing *Eversly v. Mbank*, 843 F.2d 172, 174 (5th Cir. 1988); *Bookman*, 945 F.

Supp. at 1002).

### III. 42 U.S.C. § 1983

Valdez moves for summary judgment on Plaintiff's claims that she violated his constitutional

rights pursuant to 42 U.S.C. § 1983 while he was a pretrial detainee in the Dallas County Jail.  (Mot.

at 1).

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of

a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United

States."  *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  To state a claim under § 1983, Plaintiff

must allege facts that show (1) he has been deprived of a right secured by the Constitution and the

laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999). Section 1983 reaches only those constitutional injuries caused by persons acting under color of state law. *Dahl v. Akin*, 630 F.2d 277, 281 (5th Cir. 1980).

## IV. QUALIFIED IMMUNITY

Valdez asserts she is entitled to the defense of qualified immunity on Plaintiff's § 1983 claims of (1) overcrowded cell conditions; (2) inadequate food and nutrition; and (3) denial of reasonable or adequate medical care. (Mot. at 1-2).

## A.     Legal Standard

A governmental employee who is sued individually for a constitutional violation pursuant to § 1983 may assert the affirmative defense of qualified immunity.[1] *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).[2] The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The threshold question to a determination of whether Defendants are entitled to qualified immunity is whether, taken in the light most favorable to the Plaintiff, the facts alleged show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The Court need

---

[1]Municipalities and officers sued in their official capacity do not enjoy  immunity from suit, either absolute or qualified, under § 1983. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 476 (5th Cir. 1999).

[2]Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved at the earliest possible stage in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

inquire no further if no constitutional right would have been violated based on the facts alleged by Plaintiff and taken in the light most favorable to him. *Id.* at 201. If the Court can find a constitutional violation under the favorable view of the submissions, the next sequential step is to determine whether the violated constitutional right was clearly established within the specific context of the case. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. Whether the conduct of which the plaintiff complains violated clearly established law is essentially a legal question. *White*, 959 F.3d at 544.

The plaintiff has the burden to show the inapplicability of an asserted qualified immunity defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam). To satisfy that burden, the plaintiff must present specific facts to defeat the claimed immunity. *Nunez v. Simms*, 341 F.3d 385, 388 (5th Cir. 2003); *Wicks v. Miss. State Employment Servs.*, 41 F.3d 991, 995 (5th Cir. 1995).

**B.    Overcrowding**

The first claim raised by Plaintiff is that the cell to which he was assigned in the Dallas County Jail was overcrowded. (Compl. at 4). He contends that ten inmates were assigned to a cell designed for seven, and that as a result of this overcrowding he had to sleep on the concrete floor, an arrangement which exacerbated a pre-existing knee injury and further limited his ability to walk. (*Id.*; MJQ at 3).

**1.    Constitutional Violation**

The Court first considers whether Plaintiff, who was a pretrial detainee at the time of the events that allegedly occurred in the Dallas County Jail, has alleged a constitutional violation. A pretrial detainee's claim that he suffered a constitutional violation by a state official is examined

according to the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996). The Due Process Clause precludes the state from punishing a detainee who has not been adjudicated guilty. *Bell*, 441 U.S. at 535. Therefore, "[a] pretrial detainee's due process rights are said to be as least as great as the Eighth Amendment protections available to a convicted prisoner." *Hare*, 74 F.3d at 639 (internal quotations and citations omitted). Liability for alleged violations of a detainee's rights by state officials can be premised on two theories of recovery: (1) that the conditions of confinement violated the detainee's rights or (2) that episodic acts or omissions of the officials violated the detainee's rights. *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997).

A conditions of confinement case involves a constitutional attack on the "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare*, 74 F.3d at 644. Such cases include those where the incarcerated plaintiff complains of inadequate food, heating or sanitary conditions. *Scott*, 144 F.3d at 53. In this action, Plaintiff's allegations of overcrowding in his cell over a four and a half month period give rise to a conditions of confinement case. *Edwards v. Johnson*, 309 F.3d 772, 778 (5th Cir. 2000) (complaint regarding the number of bunks in a cell is best characterized as complaint about general conditions of confinement).

In deciding the constitutionality of conditions of confinement of pretrial detainees, the court must determine whether the conditions are "imposed for the purpose of punishment." *Hamilton v. Lyons*, 74 F.3d 99, 104 (5th Cir. 1996) (citing *Bell*, 441 U.S. at 538). A court may find an intent to punish "upon direct proof of an expressed intent by detention facility officers to punish the pretrial detainee for the crime with which the detainee has been charged but not yet convicted." *Id.* Additionally, a court may infer a punitive purpose "if the challenged condition or restriction is not reasonably related to a legitimate governmental objective." *Hamilton*, 74 F.3d at 104 (citing *Bell*,

441 U.S. at 539). A restriction is reasonably related to the legitimate governmental objective if it is: (1) rationally related to a legitimate governmental purpose and (2) not excessive in relation to that purpose. *Hamilton*, 74 F.3d at 104 n. 3 (citing *Bell*, 441 U.S. at 561). The *Bell* court observed: "[i]f a restriction or condition is not reasonably related to a legitimate goal - if it is arbitrary or purposeless - a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees." *Bell*, 441 U.S. at 539; *Hamilton*, 74 F.3d at 105. In conditions of confinement cases, the jail official's state of mind is not a disputed issue because the intent is manifest in the challenged condition, practice, rule, or restriction. *See Hare*, 74 F.3d at 644; *Palo v. Dallas County*, 2007 WL 2140590, at *2 (N.D. Tex. July 26, 2007) (Fitzwater, J.) (condition of confinement claim involves no independent inquiry into the jail officials' state of mind).

The Court first considers whether the facts, viewed in the light viewing most favorable to Plaintiff, are sufficient to state a constitutional violation. *See Kinney v. Weaver*, 367 F.3d 337, 367 (5th Cir. 2004). In the instant case, Plaintiff avers that he was among ten prisoners assigned to a cell designed for seven; he neither had an elevated bed nor a mattress and was forced to sleep on the concrete floor for the 141 days he spent in the Dallas County Jail.[3]  (Compl. at 4; MJQ at 2-3). Plaintiff also avers that Valdez was personally aware that he was sleeping on the floor because he sent her a kit request raising this complaint. (MJQ at 2). Valdez's sworn statement merely states that she was not personally involved in Plaintiff's conditions of confinement and that she was

---

[3]As noted in Part II, *supra*, a summary judgment nonmovant who does not respond to the motion is relegated to his pleadings, which are typically unsworn and do not constitute summary judgment evidence. *Bookman*, 945 F. Supp. at 1002. In this case, however, Plaintiff signed under penalty of perjury both his complaint and Answers to the Magistrate Judge's Questionnaire. (*See* Compl. at 5; MJQ at 9). Because Plaintiff's pleadings were submitted under the penalty of perjury, they may be considered as competent summary judgment evidence. *See Barnes v. Johnson*, 2006 WL 3102343, at *1 (5th Cir. 2006), slip copy (verified complaint may serve as competent summary judgment evidence).

unaware of any allegedly overcrowded conditions.  (Mot. App. at 32-33).  Based on the conflicting version of the events provided by the parties, the Court finds that a genuine issue of material fact exists as to whether the conditions of Plaintiff's confinement were overcrowded as he alleged.

The Court must also consider whether the allegedly overcrowded conditions of confinement were imposed for purposes of punishment.  *Hamilton*, 74 F.3d at 104.  In this case, there is no direct evidence that Valdez intended to punish Plaintiff.  The Court, however, may infer a punitive purpose if there is no legitimate governmental objective to the overcrowding of prisoners.  *See Bell*, 441 U.S. at 538-39; *Hamilton*, 74 F.3d at 104. Valdez proffered no explanation, much less any evidence, in her three page brief or two page affidavit for how requiring a detainee to sleep on a concrete floor without a mattress for four and a half months is reasonably related to a legitimate governmental objective.  (*See* Mot. Br. at 1-3).  Without such an explanation, the Court infers a punitive purpose to the overcrowding of prisoners.  *Hamilton*, 74 F.3d at 104.

Viewing the summary judgment evidence in the light most favorable to the non-movant, the Court finds that Plaintiff has stated a violation of his constitutional right to due process.

### 2.        Clearly Established Right

Having determined that Plaintiff has stated a violation of his constitutional right to due process, the Court next considers whether the right not to be subjected to overcrowded conditions was clearly established within the context of the case.  *Saucier*, 533 U.S. at 201.

"Overcrowding of persons in custody is not *per se* unconstitutional."  *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347-50 (1981)).  Courts that have considered the impact of overcrowding on sleeping arrangements have found that the lack of an elevated bed does not subject a detainee to impermissible punishment.  *Mann v. Smith*, 796 F.2d 79, 85 (5th Cir. 1986) (argument that it was unconstitutional to require a detainee to sleep on

a mattress on the floor was without merit); *McCarty v. McGee*, 2008 WL 341643, at \*3 (S.D. Miss. Feb. 5, 2008) (sleeping on the floor due to overcrowding was not unconstitutional because each prisoner received a mattress).  Likewise, requiring a prisoner to sleep on the floor for a short period of time without a mattress is not considered impermissible punishment.  *Collins*, 382 F.3d at 545 (finding a *de minimis* level of imposition where plaintiff was without a mattresses for less than 24 hours).  A detainee can be subjected to impermissible punishment, however, if he is forced to sleep on the floor without a mattress when mattresses are available.  *Hebert v. Maxwell*, 214 Fed.Appx. 451, 456 (5th Cir. 2007).  Requiring a pretrial detainee to sleep on the floor for a lengthy period of time can also constitute impermissible punishment.  *See Hall v. Dalton*, 34 F.3d 648 (8th Cir. 1994) (finding a due process violation where detainee was jailed in an overcrowded cell for 40 days, was required to sleep on the floor, and was not allowed sufficient exercise).

In light of these cases, the Court finds that Plaintiff's right to be free from overcrowded conditions was clearly established at the time of his detention in the Dallas County Jail.  The facts presented by Plaintiff, namely that he slept on the floor without a mattress in an overcrowded cell for 141 days, are sufficient to meet his burden to show the inapplicability of Valdez's asserted defense of qualified immunity for this claim.  *McClendon v. City of Columbia*, 305 F.3d at 323. Accordingly, Valdez's motion for summary judgment on the basis of qualified immunity should be denied as to Plaintiff's claim of overcrowding.

**D.**     **Inadequate Food and Nutrition**

The second claim raised by Plaintiff is that he did not receive adequate food and nutrition. (Compl. at 4).  He avers that the food was not nutritious, that the portions were small, and that the food made him sick and caused him to lose weight.  *Id.*

### 1.    Constitutional Violation

As with Plaintiff's first complaint, this allegation complains of general conditions of confinement in the Dallas County Jail over a four and a half month period. The Court therefore examines this complaint under the framework for conditions of confinement. *Scott*, 114 F.3d at 53 (conditions of confinement cases include those in which the prisoner complains of inadequate food).

The Court first considers whether the facts, viewed in the light viewing most favorable to Plaintiff, are sufficient to state a constitutional violation. *See Kinney*, 367 F.3d at 367. In the instant case, Plaintiff avers that the food was inadequate, that the portions were small and not nutritious, and that the food caused him to lose more than twenty pounds and gave him constant diarrhea. (Compl. at 4). He also avers that Valdez was personally aware of his complaint regarding the food because he sent her a kit request stating that he lacked "proper care." (MJQ at 2). Valdez's sworn statement merely refutes Plaintiff's version of the events; she says she was not personally involved in Plaintiff's conditions of confinement and she was unaware that he was denied adequate food an nutrition. (Mot. App. at 32-33). Based on the conflicting version of the events provided by the parties, the Court finds that a genuine issue of material fact exists whether Plaintiff was denied adequate food and nutrition as alleged.

The Court must also consider whether the conditions of confinement were imposed for purposes of punishment. *Hamilton*, 74 F.3d at 104. In this case, there is no direct evidence that Valdez intended to punish Plaintiff by denying him adequate food and nutrition. As with Plaintiff's claim for overcrowding, Valdez proffered no explanation, much less any evidence, in her three page brief or two page affidavit for how denying a detainee adequate food and nutrition is reasonably related to a legitimate governmental objective. (*See* Mot. Br. at 1-3). Without such an explanation, the Court infers a punitive purpose to the denial of adequate food and nutrition. *See Bell*, 441 U.S.

at 538-39; *Hamilton*, 74 F.3d at 104.

Viewing the summary judgment evidence in the light most favorable to the non-movant, the Court finds that Plaintiff has stated a violation of his due process right to well-balanced meals containing sufficient nutritional value to preserve his health. *See Green v. Ferrell*, 801 F.2d 765, 770-71 (5th Cir.1986); *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (to allege a constitutional deprivation of food, a detainee must, at a minimum, allege a nutritionally and calorically inadequate diet or specific physical harm, such as weight loss or other adverse physical affects); *see also Clewis v. Anderson County Comm'rs Court*, 62 F.3d 392, 1995 WL 449794, at *1 (5th Cir. June 28, 1995) (unpublished) (finding no constitutional deprivation for a pretrial detainee who did not plead any facts raising an allegation that the food was nutritionally inadequate, prepared under unsanitary conditions, or that his health was adversely affected).

### 2.      Clearly Established Right

Having determined that Plaintiff has stated a violation of his constitutional right to due process, the Court next considers whether the right to adequate food and nutrition was clearly established within the context of the case. *Saucier*, 533 U.S. at 201.

The Constitution requires no more than "well-balanced meals, containing sufficient nutritional value to preserve health." *Green*, 801 F.2d at 770-71; *see id*. at 771 n. 5 (clarifying that this standard applies to pretrial detainees as well as to convicted prisoners). The deprivation of food constitutes a denial of due process only if it denies a detainee the minimal civilized measure of life's necessities; such a denial depends on the amount and duration of the deprivation. *See Berry*, 192 F.3d at 507; *Talib v. Gilley*, 138 F.3d 211 (5th Cir. 1998).

In light of the cited cases, the Court finds that Plaintiff's right to adequate food and nutrition was clearly established at the time of his detention in the Dallas County Jail. The facts presented

by Plaintiff, namely that he consumed insufficient quantities of unhealthy food for 141 days and that this food made him physically ill and caused him to lose weight, are sufficient to meet his burden to show the inapplicability of Valdez's asserted defense of qualified immunity for this claim. *McClendon*, 305 F.3d at 323. Accordingly, Valdez's motion for summary judgment on grounds of qualified immunity as to Plaintiff's claim of inadequate food and nutrition should be denied.

## E.      Denial of Reasonable or Adequate Medical Care

Plaintiff's third and final complaint is that he was denied reasonable or adequate medical care. (Compl. at 4). Plaintiff avers that he did not receive medicine prescribed to him for high blood pressure. (MJQ at 4, 6). He also avers that despite numerous requests for medical care related to his knee injury and food-related illnesses, he did not receive any medical treatment while detained in the Dallas County Jail. (*Id*. at 6-7).

The Court first must determine whether to analyze Plaintiff's claims related to his medical care under the standard for conditions of confinement or under the standard for episodic acts or omissions. A condition of confinement claim based on inadequate medical treatment differs from an episodic act or omission claim because it "does not focus solely on the acts or omissions of the staff on duty at the Jail. Rather, it also attacks the Jail medical care system itself." *Shepherd v. Dallas County, Tex.*, 2008 WL 656889, at *4 (N.D. Tex. Mar. 6, 2008) (Fitzwater, C.J.). An episodic act or omission claim, on the other hand, involves a particular act or omission of one or more officials. *Id*. at *7.

Here, Plaintiff raises both types of claims. He alleges that "all attempts" to have medical staff treat his stomach pain, gastrointestinal illnesses, and aggravated knee injury were ignored. (Compl. at 4). The Court construes these complaints as an attack on the conditions of confinement since they address the medical care system in the Dallas County Jail itself. *Shepherd*, 2008 WL

656889, at *4.  Plaintiff also alleges that he was repeatedly denied access to his blood pressure medication for a four and a half month period.  (Compl. at 4; MJQ at 2).  Although the denial of medication could conceivably address a general condition of confinement, the Court finds that because the denial of medication was a repeated, discrete event, it is more appropriately addressed as a claim of an episodic act or omission.  *Stephens v. Dallas County, Tex.*, 2007 WL 34827, at *5 (N.D. Tex. Jan. 4, 2007) (Kinkeade, J.) (viewing failure to receive required prescription medications for several days to involve episodic acts or omissions).  Plaintiff's allegation that Valdez told him that his lack of care was "not her problem," (MJQ at 2), clearly involves a particular act of omission by an official and is therefore addressed as an episodic act or omission.  *Shepherd*, 2008 WL 656889, at *7; *see Scott*, 114 F.3d at 53 (when the alleged violation of a pretrial detainee's rights is a particular act or omission of one or more officials, the action is properly characterized as an episodic act or omission case).

### 1.     Conditions of Confinement Claim

The Court first addresses Plaintiff's conditions of confinement claim of inadequate medical care at the Dallas County Jail.

#### a.      *Constitutional Violation*

The Court first considers whether the facts, viewed in the light viewing most favorable to Plaintiff, are sufficient to state a constitutional violation.  *See Kinney*, 367 F.3d at 367.  In the instant case, Plaintiff avers that "all attempts" for medical treatment for his stomach pain, gastrointestinal illnesses, and aggravated knee injury "were ignored" for the duration of his 141-day stay in the Dallas County Jail.  (Compl. at 4).  These attempts included requests for medical treatment sent directly to Valdez.  (MJQ at 6).  Valdez's sworn statement merely refutes Plaintiff's version of the events; she says she was not personally involved in Plaintiff's conditions of confinement and she

was unaware of any denial of medical care. (Mot. App. at 32-33). Valdez also included a certified copy of Plaintiff's medical records. (Mot. App. at 29-31). If these two records submitted by Valdez constitute all of Plaintiff's medical records, they actually *support* Plaintiff's complaint because they show he only received medical care on two occasions: when he was admitted into the custody of the Dallas County Jail on June 26, 2006, and when he was released on November 13, 2006. (Mot. App. at 30-31). Valdez did not include any records from the intervening 139 days to establish that Plaintiff's requests for medical care were answered. Moreover, the Court notes that the medical records only show that Plaintiff was screened for tuberculosis on arrival and that a nurse completed an unspecified protocol upon his departure; the records do not contain any other information regarding Plaintiff's physical health. *See id.* Based on the conflicting version of the events provided by the parties, the Court finds that a genuine issue of material fact exists whether Plaintiff was denied adequate medical care as alleged.

The Court must also consider whether the alleged denial of adequate medical was imposed for purposes of punishment. *Hamilton*, 74 F.3d at 104. There is no direct evidence that Valdez intended to punish Plaintiff by denying him adequate medical care. As with Plaintiff's two other claims relating to the conditions of his confinement, however, Valdez proffered no explanation, much less any evidence, in her three page brief or two page affidavit for how denying a detainee adequate medical care is reasonably related to a legitimate governmental objective. (*See* Mot. Br. at 1-3). Without such an explanation, the Court infers a punitive purpose to the denial of adequate medical care. *See Bell*, 441 U.S. at 538-39; *Hamilton*, 74 F.3d at 104.

Viewing the facts in the light most favorable to the nonmovant, the Court finds that Plaintiff has alleged a violation of his constitutional right to reasonably adequate medical care. *Hare*, 74 F.3d at 644; *Estelle*, 429 U.S. at 103-04.

### b.    Clearly Established Right

Having determined that Plaintiff has stated a violation of his constitutional right to due process, the Court next considers whether the right to reasonably adequate medical care was clearly established within the context of the case.  *Saucier*, 533 U.S. at 201.

When the State takes a person into its custody and holds him there against his will, "its ultimate constitutional duty is 'to assume some responsibility for [the] safety and general well-being' of persons whose state-occasioned confinement renders them unable to fend for themselves." *Hare*, 74 F.3d at 644 (citing *DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 200 (1989)).  This duty includes the provision of reasonably adequate medical care in order to prevent the pretrial detainee from suffering further physical pain or harm.  *Id*.; *see Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976) (state must provide adequate medical care to incarcerated prisoners); *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001) ("there is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care").

The Court finds that Plaintiff's right to adequate medical care was clearly established at the time of his detention in the Dallas County Jail.  The facts presented by Plaintiff, namely that he made repeated requests for care related to his stomach pain, gastrointestinal illnesses, and aggravated knee injury, are sufficient to meet his burden to show the inapplicability of Valdez's asserted defense of qualified immunity for this claim.  *McClendon*, 305 F.3d at 323.  Accordingly, Valdez's motion for summary judgment on grounds of qualified immunity should be denied as to Plaintiff's conditions of confinement claim of inadequate medical care.

### 2.    Episodic Act or Omission Claim

Finally, the Court considers the denial of Plaintiff's blood pressure medication and Valdez's personal response to his request for medical care.

When the alleged unconstitutional conduct involves an episodic act or omission, a detainee must demonstrate that the jail official acted or failed to act with deliberate indifference to the detainee's needs. *Hare*, 74 F.3d at 648; *see Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000). Deliberate indifference "describes a state of mind more blameworthy than negligence" but is "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Subjective deliberate indifference "cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001) (citing *Hare*, 74 F.3d at 645, 649). Rather, "[d]eliberate indifference is an extremely high standard to meet" and requires a showing that "the officials 'refused to treat [the prisoner or detainee], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985)).

In the context of an episodic failure to provide reasonable medical care to a pretrial detainee, this means that an official will not be found deliberately indifferent unless the detainee establishes three things: (1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and (3) the official's response indicates the official subjectively intended that harm to occur. *Shepherd*, 2008 WL 656889, at *7 (citing *Thompson*, 245 F.3d at 458-59).

### a. *Constitutional Violation*

In this case, Plaintiff avers that he did not receive his prescription blood medication for the four and a half month duration of his confinement. (Compl. at 4). He also avers that he sent Valdez

a kit request stating that he did not have the proper care, and that Valdez told him his complaints were not her problem. (MJQ at 2). Valdez summarily denies these claims, and in support she attaches two medical records. (Mot. App. Ex. 29-33). The medical records do not indicate that Plaintiff received his prescription medications or any other medical care other than the examinations he received on his arrival and departure. (*See* Mot. App. Ex. 3, at 30-31). Although Valdez avers that she was not personally involved in any of the alleged events that form the basis of Plaintiff's action, (Mot. App. at 32), at most this statement shows that a genuine issue of material fact remains for trial. Based on the conflicting versions of events and viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has alleged a violation of his constitutional right to reasonably adequate medical care. *Estelle*, 429 U.S. at 103-04.

### b. *Clearly Established Right*

Having determined that Plaintiff has stated a violation of his constitutional right to reasonably adequate medical care, the Court next considers whether this right was clearly established within the context of the case. *Saucier*, 533 U.S. at 201.

Denying or delaying access to medical care can constitute deliberate indifference to the medical needs of an inmate, as can interfering with treatment once prescribed. *Estelle*, 429 U.S. at 105; *see e.g. Harris v. Hegman*, 198 F.3d 153, 159 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Walker v. Butler*, 967 F.2d 176, 178 (5th Cir. 1992); *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990). Ignoring an inmate's complaints or engaging in "conduct that would clearly evince a wanton disregard for any serious medical needs" also can show deliberate indifference. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

The Court finds that Plaintiff's right to adequate medical care was clearly established at the time of his detention in the Dallas County Jail. If the facts presented by Plaintiff occurred, namely

that he did not receive his prescribed medication and that Valdez told him his complaints were not her problem, a reasonable trier of fact could conclude that Valdez had subjective knowledge of Plaintiff's medical condition but responded with deliberate indifference. *Thompson*, 245 F.3d at 458-59; *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999) (to prevail on a § 1983 claim against an individual defendant, a pretrial detainee must show that the defendant had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk). The facts presented by Plaintiff are sufficient to meet his burden to show the inapplicability of Valdez's asserted defense of qualified immunity for this claim. *McClendon*, 305 F.3d at 323. Accordingly, Valdez's motion for summary judgment on grounds of qualified immunity should also be denied as to Plaintiff's episodic act or omission claim of inadequate medical care.

## IV. CONCLUSION

For the reasons stated above, the Court recommends that Defendant's *Motion for Summary Judgment Based on Qualified Immunity* be **DENIED**.

**SO RECOMMENDED** on this 29th day of April, 2008.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

- 20 -

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE